IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 07-cv-02521-LTB

EFFKAY ENTERPRISES, a California general partnership,

    Plaintiff,

v.

J.H. CLEANERS, INC., a Colorado corporation;
WILLIAM HUTCHINSON, an individual;
KATZSON BROTHERS., INC., a Colorado corporation; and
DOES 1 through 50,

    Defendants.
_____

ORDER
_____

This environmental contamination case is before me on the motion of Defendant, Katzson Brothers, Inc.'s ("Katzson"), Partial Motion to Dismiss Complaint and to Strike Portions of Prayer for Relief [**Docket # 10**], Plaintiff's Response [**Docket # 14**], and Katzson's Reply [**Docket # 21**]. Oral arguments would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I GRANT IN PART and DENY IN PART Katzson's Partial Motion to Dismiss Complaint and to Strike Portions of Prayer for Relief [**Docket # 10**].

## I. BACKGROUND

The following facts are alleged in the Complaint [**Docket # 1**]. Plaintiff is the owner of a property in Denver, Colorado (the "property"). Defendant J.H. Cleaners leased the property from Plaintiff beginning in 1997. J.H. Cleaners operated a dry cleaning, laundry, and leather cleaning business on the property. In or about January 2007, Plaintiff filed a Complaint in

Forcible Entry and Unlawful Retainer alleging a failure to pay rent. Plaintiff and J.H. Cleaners subsequently agreed to terms for J.H. Cleaners to vacate the property and Plaintiff regained possession.

Upon regaining possession, Plaintiff retained Terracon Consulting Engineers and Scientists ("Terracon") to assess the property for adverse environmental impacts. Terracon determined the soil and groundwater underlying the property was contaminated with toxic volatile organic compounds associated with dry cleaning ("cleaning chemicals"). Plaintiff alleges the contamination is due to spills, leaks, or other releases of the cleaning chemicals occurring as a result of the dry cleaning operation. The Colorado Department of Public Health and Environment has indicated to Plaintiff that remediation of the soil and groundwater subjacent to the property will be necessary.

Defendant Katzson supplied J.H. Cleaners with cleaning machines and cleaning chemicals throughout the time period in which J.H. Cleaners remained on the property. Katzson was responsible for installing the cleaning machines and pumping the chemicals directly into the cleaning machines while on the property. Until 1998 or 1999, delivery to the machines was made through a hose connected to Katzson's delivery truck.

Plaintiff filed the present complaint on December 4, 2007, alleging ten claims for relief: (1) Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601 *et seq*. ("CERCLA"), recovery against all Defendants; (2) CERCLA contribution against all Defendants; (3) declaratory relief under CERCLA against all Defendants; (4) breach of lease against J.H. Cleaners and Defendant Hutchinson; (5) continuing trespass against all Defendants; (6) continuing nuisance against all Defendants; (7) negligence against all

Defendants; (8) negligence *per se* against all Defendants; (9) strict liability against Katzson; and (10) declaratory relief against all Defendants.

Defendant Katzson filed the present motion on February 6, 2008 [**Docket # 10**]. Katzson moves to dismiss Plaintiff's Ninth and Tenth Claims for Relief for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6). Katzson also seeks to strike—under FED. R. CIV. P. 12(f)—Plaintiff's prayer for relief for future damages arising out of the continuing nuisance and continuing trespass claims.

## II. STANDARD OF REVIEW

### A. FED. R. CIV. P. 12(b)(6)

Granting a motion to dismiss is a harsh remedy which must be exercised with caution to protect the liberal rules of pleading and the interests of justice. *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989). Thus, the Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim. *Id*. Nonetheless, a claim "may be dismissed either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim." *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, a district court must accept as true all factual allegations in the complaint. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). While the factual allegations need not be pleaded in great detail, they must be sufficiently precise to raise a right to relief above the speculative level. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65, 1969 (2007) (abrogating the rule of *Conley v. Gibson*, 355 U.S. 41, 44–45 (1957), that "a complaint should

3

not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A district court should dismiss the complaint if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, *supra*, 127 S. Ct. at 1974; *see also Kay*, *supra*, 500 F.3d at 1218. "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1974). "Plausibility," however, does not refer to the likelihood that the allegations can be proven or even that the allegations are true. *Robbins*, 519 F.3d at 1247.

"[T]he determination of whether a complaint contains enough allegations of fact to state a claim to relief that is plausible on its face is dependent on the context of the claim raised." *Kelley v. New York Like Ins. & Annuity Corp.*, No. 07-cv-01702-LTB-BNB, 2008 WL 1782647, at *3 (D. Colo. Apr. 17, 2008); *see also Robbins*, *supra*, 519 F.3d at 1248. The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk*, *L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). Accordingly, within the context of the claim alleged, the complaint must contain enough specific allegations of fact to show that if all the alleged facts—and only the alleged facts—are believed

4

to be true, the plaintiff has a claim for relief. *See Twombly*, *supra*, 127 S. Ct. at 1965; *Robbins*, 519 F.3d at 1247–48.

B. FED. R. CIV. P. 12(f)

Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The rule's purpose is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of the case. *See Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997). "Motions to strike are a severe remedy, and as such are generally disfavored." *Sender v. Mann*, 423 F. Supp. 2d 1155, 1163 (D. Colo. 2006). "Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy." *Sierra Club v. Tri-State*, 173 F.R.D. at 285 (citations omitted). Moreover, "motions to strike are usually only granted when the allegations have no bearing on the controversy and the movant can show that he has been prejudiced." *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001). The burden of proof is a heavy one. *Id*.

**III. ANALYSIS**

A federal court sitting in diversity applies the substantive law of the forum state. *See Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002). The Colorado Supreme Court is the final authority on Colorado law. *See Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177–78 (1940). When I am called upon to interpret Colorado law, therefore, I must first look to rulings of the Colorado Supreme Court. *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006). If no applicable rulings exist, I must endeavor to predict how the Colorado Supreme Court would rule. *Id*. In such circumstances, I must follow any intermediate state

5

court decision unless other authority demonstrates the Colorado Supreme Court would decide otherwise. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984). The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform my analysis. *Id*. at 1574–75.

### A. Motion to Dismiss Plaintiff's Ninth Claim for Relief

In its Ninth Claim for Relief, Plaintiff alleges two theories of strict liability. First, Plaintiff alleges the use, handling, storage, and disposal of the cleaning chemicals is an abnormally dangerous or ultra-hazardous activity. *See Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1543–45 (10th Cir. 1992) (discussing Colorado strict liability law). Second, Plaintiff alleges the cleaning chemicals were defective and that Katzson had actual knowledge of the defect when it sold the chemicals, thus subjecting it to strict products liability as a "manufacturer" of the chemicals under COLO. REV. STAT. § 13-21-401(1) & 402(1).

*1. Whether the use, handling, storage, and disposal of cleaning chemicals is an abnormally dangerous or ultra-hazardous activity*

The Colorado Supreme Court recognizes a theory of strict liability for ultra-hazardous or abnormally dangerous activities. *See Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 81 (Colo. 1998); *Mountain States Tel. & Tel. Co. v. Horn Tower Const. Co.*, 147 Colo. 166, 170 (Colo. 1961) ("Since the emergence of negligence as an independent tort during the last century, fault has been a necessary ingredient of tort liability except in the area of ultra-hazardous activity."). One who engages in such activity is strictly liable for any damages proximately caused to other persons, land, or chattels by that activity. *See Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 486 (D. Colo. 1998).

Whether an activity is ultra-hazardous—thereby subjecting the actor to strict liability—is a question of law for a court to decide. *See King v. United States*, 53 F. Supp. 2d 1056, 1076 (D. Colo. 1999), *rev'd in part on other grounds*, 301 F.3d 1270 (10th Cir. 2002). In making such determination, I look to the factors outlined in RESTATEMENT (SECOND) OF TORTS § 520. *Id.* Analysis of these factors requires a particularized inquiry into the activity alleged to be ultra-hazardous or abnormally dangerous. *See Daigle*, *supra*, 972 F.2d at 1544. This initial inquiry is a factual one that requires consideration of all the relevant circumstances. *See id.* The same level of inquiry is necessary whether the Court is asked to determine an activity is abnormally dangerous or whether the Court is asked to determine an activity is not abnormally dangerous. *See id.* at 1543–44.

Although both parties provide me with non-Colorado case law supporting their respective positions, Colorado law on the issue of whether the use, handling, storage, and disposal of the cleaning chemicals is abnormally dangerous or ultra-hazardous is unsettled. The one case addressing cleaning chemicals did not address the type of chemicals allegedly at issue here—carcinogenic volatile organic compounds that are toxic to soil and groundwater even at extremely low concentrations—but only addressed chemicals that were harmful because they were caustic. *See Forrest v. Imperial Distrib. Servs., Inc.*, 712 P.2d 488 (Colo. Ct. App. 1985), *rev'd on other grounds*, 741 P.2d 1251 (Colo. 1987). As noted by the Tenth Circuit in *Daigle*, the *Forrest* court "limited its holding to the 'activities complained of,'" and those activities bear resemblance to the allegations in Plaintiff's complaint only to the extent they both involve "cleaning chemicals." *See Daigle*, *supra*, 972 F.2d at 1544.

While Plaintiff's argument appears weak in light of *Forrest* and other Colorado case law

regarding hazardous activities—*see*, *e.g.*, *Ward v. Aero-Spray, Inc.*, 458 P.2d 744, 746 (Colo. 1969) (applying a negligence standard); *Grange Mut. Fire Ins. Co. v. Golden Gas Co.*, 298 P.2d 950, 953 (Colo. 1956) (same); *Hartford Fire Ins. Co. v. Public Serv. Co. of Colo.*, 676 P.2d 25, 27 (Colo. Ct. App. 1983)—my inquiry under Rule 12(b)(6) does not ask whether Plaintiff is likely to prevail. Instead, I ask only whether Plaintiff's complaint contains enough specific allegations of fact that if all the alleged facts—and only the alleged facts—are believed to be true, Plaintiff can show the use, handling, storage, and disposal of cleaning chemicals is abnormally dangerous or ultra-hazardous. *See Twombly*, *supra*, 127 S. Ct. at 1965; *Robbins*, *supra*, 519 F.3d at 1247–48. Under this standard, Plaintiff's complaint adequately alleges such facts.

As noted by the Tenth Circuit in *Daigle*, the requisite factors I must consider under RESTATEMENT (SECOND) OF TORTS § 520 when determining whether a given activity is ultra-hazardous or abnormally dangerous are:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

*See Daigle*, *supra*, 972 F.2d at 1544. The presence of any one of these factors "is not necessarily

8

sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand, it is not necessary that each of them be present, especially if others weigh heavily." RESTATEMENT (SECOND) OF TORTS § 520 comment f.

Plaintiff's complaint alleges the following facts in support of its ultra-hazardous or abnormally dangerous activity theory: (1) Katzson marketed, distributed, and/or sold products containing the cleaning chemicals; (2) the cleaning chemicals are toxic in low concentrations; (3) the cleaning chemicals are known carcinogens; (4) the cleaning chemicals can cause severe damage to the liver, kidneys, and central nervous system; (5) the cleaning chemicals create a substantial risk of harm to groundwater and soil even at extremely low levels; (6) the cleaning chemicals cause toxic groundwater contamination even when used in their foreseeable and intended manner; (7) the cleaning chemicals pose a significant threat to public health; and (8) the cleaning chemicals render water unfit to drink even at extremely low levels. Although these allegations do not address considerations d through f of the RESTATEMENT, the RESTATEMENT makes clear that all six inquiries need not be met. The allegations are therefore sufficient to support all the elements necessary to find the use, handling, storage, and disposal of cleaning chemicals to be an abnormally dangerous or ultra-hazardous activity. *See Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Thus, if believed to be true—and if no contradictory evidence were presented, and no evidence presented addressing the d through f considerations—the facts alleged would be sufficient to raise Plaintiff's right to relief above a speculative level. *See Twombly*, *supra*, 127 S. Ct. at 1964–65.

*2. Whether Katzson was a "manufacturer" of the cleaning chemicals under*

*COLO. REV. STAT. § 13-21-401(1) & 402(1)*

Plaintiff also alleges strict liability under a product liability theory. Under COLO. REV. STAT. § 13-21-402(1), "[n]o product liability action shall be commenced or maintained against any seller of a product unless said seller is also the manufacturer of said product or the manufacturer of the part thereof giving rise to the product liability action." A "manufacturer" means "a person or entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer. The term includes any seller who has actual knowledge of a defect in a product." COLO. REV. STAT. § 13-21-401(1).

"A 'defect' does not mean a mere mechanical or functional defect but is anything that makes the product 'unreasonably dangerous.'" *Anderson v. M.W. Kellogg Co.*, 766 P.2d 637, 643 (Colo. 1988). A product is "unreasonably dangerous" if the danger inherent in the product outweighs the product's benefits. *See Armentrout v. FMC Corp.*, 842 P.2d 175, 182 (Colo. 1992). Factors which may be considered when determining whether the risks outweigh the benefits include: the usefulness and desirability of the product; the likelihood that it will cause injury and the probable seriousness of the injury; the availability of a substitute product which would meet the same need and not be as unsafe; the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive; the user's ability to avoid danger by the exercise of care in the use of the product; the user's anticipated awareness of the dangers inherent in the product; and the existence of suitable warnings or instructions. *See id.* at 184. The list is not exclusive, but is merely illustrative of factors that may assist a court in determining whether a design is unreasonably dangerous. *Id*.

Plaintiff alleges the following facts in support of its product liability theory: (1) Katzson

10

marketed, distributed, and/or sold products containing the cleaning chemicals; (2) the cleaning chemicals were defective products because, among other things, they caused groundwater contamination even when used in their foreseeable and intended manner, they rendered water unfit for drinking even at extremely low levels, they were toxic to the liver, kidneys, and nervous system, they posed a significant threat to public health, and Katzson failed to provide adequate warnings of the known and foreseeable risks associated with the cleaning chemicals; (3) the defects existed when the cleaning chemicals left Katzson's possession; (4) Katzson knew or should have known the cleaning chemicals were defective; (5) Katzson represented, asserted, claimed and warranted that the cleaning chemicals could be used in conformity with the accompanying instructions and labels in a manner that would not cause injury or damage; (6) Katzson was aware of the risks resulting from the typical use, storage, handling, and disposal practices, and the spills and/or leakage inherent in the intended use of the chemicals; (7) Katzson arranged for the sale and transfer of the cleaning chemicals under circumstances in which an inherent part of the transfer was the leakage and/or disposal of the chemicals but failed to provide J.H. Cleaners with adequate warnings, instructions, or training; (8) Katzson knew or should have known that the cleaning chemicals would be used without inspection for defects and—if any inspection were performed—that the defects would not be discoverable with the exercise of reasonable diligence; (9) Katzson was aware that the method of delivering the cleaning chemicals prior to 1998 was not safe; (10) Katzson was aware of indicia of cleaning chemical releases and/or contamination at J.H. Cleaners; and (11) Katzson continued to sell the cleaning chemicals despite knowing that the result of such activity was the release of the chemicals into the environment.

11

Clearly, these allegations—if shown to be true—are sufficient to show both that the cleaning chemicals were unreasonably dangerous and that Katzson had knowledge of a defect or defects in the cleaning chemicals. While Katzson may ultimately dispute its knowledge of the alleged defects, or even the existence of a defect at all, those determinations will turn on questions of fact that are not appropriate for resolution in this motion to dismiss. *See Rice v. Armstrong World Indus., Inc.*, 653 F. Supp. 763, 766 (D. Colo. 1987). At this stage, Plaintiff's allegations—if believed to be true and if not contradicted by Katzson's evidence—would be sufficient to raise Plaintiff's right to relief above a speculative level. *See Twombly*, *supra*, 127 S. Ct. at 1964–65.

## B. Motion to Dismiss Plaintiff's Tenth Claim for Relief

In its Tenth Claim for Relief, Plaintiff seeks a judicial determination of the rights and duties of the parties with respect to the lease between Plaintiff and J.H. Cleaners, and a declaration as to the obligations of each party under Colorado law relating to site assessment, testing, remedial, and removal activities on contaminated property. Plaintiff alleges Defendants must indemnify Plaintiff for all of its future costs, expenses, and damages related to the contamination and must indemnify Plaintiff against future claims from third parties.

The Colorado Uniform Declaratory Judgment Law, COLO. REV. STAT. §§ 13-51-101 *et seq.*, "recognizes that courts have the broad 'power to declare rights, status, and other legal relations' . . . so long as the declaratory judgment would 'terminate the uncertainty or controversy.'" *See Zab, Inc. v. Berenergy Corp.*, 136 P.3d 252, 255 (Colo. 2006). In order to determine whether declaratory relief will clarify or settle legal relations and terminate uncertainty, courts ask two questions: "Will a declaration of rights, under the circumstances,

serve to clarify or settle legal relations in issue? Will it terminate or afford relief from the uncertainty giving rise to the proceeding? If an affirmative answer can be had to both questions, the trial court should hear the case; if not, it should decline to do so." *Id*. at 259 (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)). The need for a fact-intensive inquiry does not prohibit declaratory relief. *Id*. at 258.

Although declaratory relief may be available against some of the defendants in this case, the complaint alleges no set of facts under which declaratory relief would be available against Katzson. Katzson is not alleged to be party to any contract with Plaintiff. Neither has Plaintiff alleged any specific law or code under which its rights in relation to Katzson are in dispute. To the extent Plaintiff seeks a declaration regarding Katzson's duty to indemnify Plaintiff against future claims, no claims are alleged to exist at the present. Thus, any such indemnity is speculative and declaratory relief would not serve to terminate any existing controversy. Accordingly, Plaintiff's allegations are insufficient to raise its right to relief above a speculative level and dismissal is appropriate under Rule 12(b)(6). *See Twombly*, *supra*, 127 S. Ct. at 1964–65.

### C. Motion to Strike Plaintiff's Prayer for Relief for Future Damages Arising Out of Plaintiff's Fifth and Sixth Claims for Relief

In its Prayer for Relief, Plaintiff seeks—among other things—damages for the present and future costs of investigating and abating the alleged contamination. Katzson argues that the prayer for relief is overly broad in that it improperly requests damages for costs incurred during or after trial. Although Katzson is correct that Colorado law regarding continuing trespass and nuisance does not allow for an award of damages for injuries incurred after trial, Plaintiff's

damages at the time of trial could properly include the cost of an as-yet realized reclamation of the property so long as such cost was ascertainable at the time of trial. *See Scott v. County of Custer*, 178 P.3d 1240, 1248 (Colo. Ct. App. 2007); *Hawley v. Mowatt*, 160 P.3d 421, 425 (Colo. Ct. App. 2007). Thus, while Plaintiff's prayer for "present and future costs" could be construed to request unavailable relief, such a construction is not mandated by the language in the complaint. In light of the general disfavor afforded to Rule 12(f) motions, I decline to strike portions of Plaintiff's prayer for relief based merely on the semantic possibility that such portions could be interpreted as requesting unavailable damages.

### IV. CONCLUSION

Accordingly, Defendant Katzson's Partial Motion to Dismiss Complaint and to Strike Portions of Prayer for Relief [**Docket # 10**] is GRANTED IN PART and DENIED IN PART as follows:

1. Defendant Katzson's Motion to Dismiss Plaintiff's Ninth Claim for Relief for Strict Liability is DENIED;

2. Defendant Katzson's Motion to Dismiss Plaintiff's Tenth Claim for Relief for Declaratory Judgment as to Defendant Katzson is GRANTED;

3. Defendant Katzson's Motion to Strike Portions of Prayer for Relief is DENIED.


Dated: June   5  , 2008.

                                          BY THE COURT:


                                          s/Lewis T. Babcock
                                          Lewis T. Babcock, Judge